**15-CV-779 (LDW)(ARL)**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**KASSIM OLIVER and JOANNA PIPPINS ,**

            **Plaintiffs,**

    **-against-**

**COUNTY OF NASSAU, P.O. DAVID DESENCHAK,**
**P.O. MATTHEW ANDOOS, P.O. THOMAS WATERS,**
**P.O. NICHOLAS BRANDO, P.O. JOHN OLNOWICH,**
**LT. MICHAEL HOLFESTER, LT. JOHN PIZZIMENTI,**
**and, DETCTIVE BRIAN PARPAN,**

          **Defendants.**

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS MOTION FOR SUMMARY**
**JUDGMENT**

---

            **Massimo & Panetta, P.C.**
            **By: Nicholas J. Massimo**
            **Attorney for Plaintiff**
            **200 Willis Avenue**
            **Mineola, N.Y. 11501**
            **(516) 683-8880**

---

To:  Rebore, Thorpe & Pisarello, P.C.
   Attn:  Joseph F. Pusateri, Esq.
   Attorneys for Defendants
   500 Bi-County Boulevard
   Suite 214N
   Farmingdale, New York 11735
   (631) 249-6600

# TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………….…     1

STATEMENT OF FACTS…………………….…………….     2

STANDARD OF REVIEW ON A MOTION FOR
SUMMARY JUDGMENT PURSUANT TO RULE 56………....    12

ARGUMENT………………………….…………….    13

POINT I:     THE PLAINTIFFS ARE ENTITLED TO SUMMARY
             JUDGMENT ON THE 42 USC § 1983 CLAIMS
             FOR FALSE ARREST AND FALSE
             IMPRISONMENT……….…………….………….    13

POINT II:    THE PLAINTIFFS ARE ENTITLED TO SUMMARY
             JUDGMENT ON THE 42 USC § 1983 CLAIMS
             FOR MALICIOUS PROSECUTION……………….    22

POINT III:   PLAINTIFFS' NEW YORK STATE LAW CLAIMS
             FOR FALSE ARREST, FALSE IMPRISONMENT
             AND MALICIOUS PROSECUTION……………….    26

POINT IV:    PLAINTIFFS ARE ENTITLED TO SUMMARY
             JUDGMENT ON THEIR FIRST AMENDMENT
             RETALIATION CLAIMS……………………….…..    27

PONT V:      PLAINTIFFS ARE ENTITLED TO SUMMARY
             JUDGMENT GRANTING PLAINTIFFS'
             DEPRIVATION OF PROPERTY CLAIM…………    28

POINT VI:    PLAINTIFFS ARE ENTITLED TO SUMMARY
             JUDGMENT DENYING THE DEFENDANTS A
             QUALIFIED IMMUNITY DEFENSE……………….    29

CONCLUSION………………………………………….    30

# TABLE OF CITATIONS

Page

Cases:

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)................    13

Babi-Ali v. City of New York, 979 F.Supp. 268 (SDNY 1997)......    29

Bernard v. United States, 25 F.3d 98 (2d Cir. 1994)...................    14

Bower Assoc. v. Town of Pleasant Val., 304 A.D.2d 259 (2003)....    28

Boyd v. City of New York, 336 F.3d 72 (2d Cir. 2003)...............    13, 22, 23, 26

Brewton v. City of New York, 550 F.Supp.2d 355 (E.D.N.Y 2008).    13, 14

Broughton v. Shanbarger, 37 N.Y.2d 451 (1975)........................    26

Butterworth v. Smith, 494 U.S. 624 (1990)...............................    27

Celotex Corp. v. Catrett, 477 U.S. 317 (1986)..........................    13

Chaplinsky v. New Hampshire, 315 U.S. 568 (1942)...................    20

City of Houston v. Hill, 482 U.S. 451 (1987).............................    20

Colon v. City of New York, 60 N.Y.2d 78 (1983).......................    23

Curley v. Village of Suffern, 268 F.3d 65 (2d Cir. 2001)..............    27

Dancy v. McKinley, 843 F.3d 93 (2d Cir. 2016)........................    16, 20

Doe v. Phillips, 81 F.3d 1204 (2d Cir. 1996),cert. denied,
520 U.S. 1115 (1997)..............................................................    29

Dorsett v. County of Nassau, 732 F.3d 157 (2d Cir. 2013)..............    27

Dowling v. City of New York, No. 11-CV-4954, 2013 WL
5502867 at *4 (EDNY 2013)....................................................    18, 20

Gentile v. State Bar of Nevada, 501 U.S. 1030 (1991)..................    27

Gilk v. Cuffiffe, 655 F.3d 78 (1st Cir. 2011)..............................    27

<u>Gooding v. Wilson</u>, 405 U.S. 518 (1972)............................................. 20

<u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982)................................... 29

<u>Higginbotham v. City of New York</u>, 105 F.Supp.3d 369 (SDNY 2015). 30

<u>Hygh v. Jacobs</u>, 961 F.2d 359, 366 (2d Cir. 1992)........................ 26

<u>In re Davan L.</u>, 91 N.Y.2d 88 (1997)......................................... 15

<u>Jackson v. City of New York</u>, 959 F.Supp.2d 219, 230 (EDNY 2013). 18, 20

<u>Martinez v. City of Schenectady</u>, 97 N.Y.2d 78 (2001)................. 22

<u>Milo v. Kralik</u>, 70 A.D.3d 1 (2d Dept. 2009).............................. 29

<u>Mitchell v. Home</u>, 377 F.Supp.2d 361 (S.D.N.Y 2005)................... 14

<u>Parratt v. Taylor</u>, 451 U.S. 527 (1981)...................................... 28

<u>People v. Case</u>, 42 N.Y.2d 98 (1977)......................................... 15, 18, 29

<u>People v. DeBour</u>, 40 N.Y.210 (1976)....................................... 16

<u>People v. Greene</u>, 135 A.D.2d 449 (1st Dept. 2001)....................... 16, 17

<u>People v. Howard</u>, 50 N.Y.2d 583 (1980).................................... 16, 20

<u>People v. Offen</u>, 96 Misc. 2d 147 (N.Y. Crm. Ct. 1978)................. 15

<u>People v. Peacock</u>, 68 N.Y.2d 675 (1986)................................... 17, 19, 30

<u>People v. Thomas</u>, 51 Misc. 3d 341 (Crm. Ct. Kings 2016).............. 19

<u>Ricciuti v. N.Y.C. Transit Authority</u>, 124 F.3d 123 (2d Cir. 1997)...... 22

<u>Singer v. Fulton County Sheriff</u>, 63 F.3d 110 (2d Cir. 1985)............. 14

<u>Scotto v. Almenas</u>, 143 F.3d 105 (2d Cir. 1998)............................ 13

<u>Town of Orangetown v. Magee</u>, 88 N.Y.2d 41 (1996).................... 28

<u>Western World Ins. Co. v. Stack Oil, Inc.</u>, 922 F.2d 118 (2d Cir. 1990). 13

Weyant v. Okst, 101 F.3d 845 (2d Cir. 1996)……………….…………….    13

Ying Jing Gan v. City of New York, 996 F.2d 522 (2d Cir. 1993)….……    29

## **Constitutions and Statutes:**

42 U.S.C. § 1983………………………………………….…………….    1, 2, 19, 23
                                                                     27, 28, 30

Federal Rules of Civil Procedure 56……………………….………........    1, 12, 13, 26

New York State Const. Art. I, § 6………………………………….........    1

New York State Const. Art. I, § 8 …………………………………….    1

New York State Const. Art. I, § 12 …………………………………….    1

New York State Criminal Procedure Law § 170.70…………………….    10

New York State Criminal Procedure Law § 290.10……………….…….    12

New York State Penal Law § 195.05 ………………….………........    2, 14, 15

New York State Penal Law § 205.30 ……………………….………….    2, 18

United States Const. Amend. I …………………………….………….    1, 2, 27, 28, 30

United States Const. Amend. IV……………………………….……….    1, 13, 16

United States Const. Amend. XIV …………………………………….    1, 16

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
KASSIM OLIVER and JOANNA PIPPINS

                    Plaintiff,

      -against-

COUNTY OF NASSAU, P.O. DAVID DESENCHAK,
P.O. MATTHEW ANDOOS, P.O. THOMAS WATERS,
P.O. NICHOLAS BRANDO, P.O. JOHN OLNOWICH,
LT. MICHAEL HOLFESTER, LT. JOHN PIZZIMENTI,
And DETECTIVE BRIAN PARPAN

Defendant(s).

---------------------------------------------------------------X

**MEMORANDUM OF LAW
IN SUPPORT OF RULE 56
MOTION FOR SUMMARY
JUDGMENT**

**15-CV-779 (LDW)(ARL)**

## <u>PRELIMINARY STATEMENT</u>

      This Memorandum of Law is submitted in support of Plaintiff Kassim Oliver and Plaintiff

Joanna Pippins' Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure ("FRCP"). On or about February 25, 2015, the Plaintiffs commenced this action against

Defendants County of Nassau, Police Officer ("P.O.") David Desenchak, P.O. Matthew Andoos,

P.O. Thomas Waters, P.O. Nicholas Brando, P.O. John Olnowich, Lt. Michael Holfester, Lt. John

Pizzimenti, and Detective Brian Parpan ("Defendants") for violations of Civil Rights by a filing

of a Summons and Complaint in the United States Federal Court, Eastern District of New York,

based upon Plaintiffs' contact with Defendants on July 12, 2012. *See, Summons & Complaint*

*annexed hereto at Exhibit ("Ex.") A.* Plaintiffs alleged violations of their rights pursuant to 42

U.S.C. § 1983, First, Fourth, Fourteenth Amendment rights to the United States Constitution, False

Arrest/Imprisonment, Malicious Prosecution, Municipal violations, Excessive Force, Deprivation

of Property, Excessive Force and similar violations under Article I, §§ 6, 8, 12 of the New York

1

State Constitution. Thereafter on or about August 27, 2015, Defendants served an Answer denying Plaintiffs claims along with fourteen affirmative defenses. *See, Defendants Answer to Plaintiff's Complaint annexed hereto at Ex. B.*

The claims are based upon Plaintiff Kassim Oliver and Plaintiff Joanna Pippins' allegations that they were falsely arrested on July 12, 2012 and charged with Obstruction of Governmental Administration and Resisting Arrest pursuant to New York State Penal Law ("PL") §§ 195.05 and 205.30 respectively and maliciously prosecuted for merely expressing their First Amendment rights to videotape the police officers' illegal actions on that date. Plaintiffs seek an award of compensatory and punitive damages as well as attorney fees.

Plaintiffs now ask this Court to grant Plaintiffs Motion for Summary Judgment and submit this Memorandum of Law in support of this motion.

## STATEMENT OF FACTS

On July 12, 2012, at 11:32 a.m., 911 hang-up call was received by the Nassau County Police Department ("NCPD") Communications Bureau from a residence located at 1 Catherine Place, North Bellmore, New York. *(See, Rule 56.1 Statement ("56.1") at ¶ 1, Ex. C).* At 11:33 a.m. an NCPD Operator called back the residence and Jacqueline ("Jacqueline") Pippins answered the phone and explained that the hang-up call was a mistake. *(See, 56.1 at ¶ 2, Ex. C).* In the background a male voice can be heard which was not in a loud or threatening manner and it is not clear if the voice is from a person in the home or a television or radio playing in the background. *(Ex. C).* Despite, this, without any cause for the same, the NCPD 911 dispatcher placed a radio call to NCPD First Precinct Officers for a 911 hang-up, possible domestic. *(See, 56.1 at ¶ 1, Ex. C).*

2

Shortly thereafter Police Officers Matthew Andoos ("Andoos") and Thomas Waters ("Waters"), uniformed officers of the First Precinct, arrived at the location, though it is unclear who arrived first. *(See, 56.1 at ¶¶ 3, 9, 10).* Around this time Police Officers David Desenchak ("Desenchak") and Nicholas Brando ("Brando") of the Bureau of Special Operations were in plainclothes and an unmarked police car in the area of the home when Desenchak heard the radio call and decided to proceed to 1 Catherine Place to assist the officers. *(See, 56.1 at ¶ 6).* Upon arrival the officers observed Jacqueline on the porch with two small children walking down the steps to the walkway holding one child in her right hand and the other in her left hand. *(See, 56.1 at ¶ 8).* None of the officers observed anything that provided probable cause to believe that a domestic violence incident occurred at the home. *(See, 56.1, ¶ 7).* Jacqueline was taking the two children to the doctor as her ten year old daughter had a brain tumor for which she needed to see the doctor for a checkup. *(See, 56.1 at ¶ 62).*

Officer Waters approached Jacqueline Pippins as she got the bottom of the steps of the porch which leads to a walkway that goes across the front lawn to a sidewalk when Officer Andoos heard Jacqueline say "We don't need you." *(See, 56.1 at ¶ 9).* Andoos then approached Jacqueline about halfway down the path and the two officers blocked her path and asked "Who called the police? Is everyone okay?" to which Jacqueline responded "We don't fucking need you, get out of here, nobody needs the police, I don't have to tell you anything." *(See, 56.1 at ¶ 11, 12).* The officers were able to observe Jacqueline and the two children and none had any physical injuries to them. *(See, 56.1 at ¶ 14).* Andoos claims that Jacqueline pushed past him and then she proceeded to continue to walk down the path to the street to a parked SUV at the curb still holding the two children, one in each of her hands. *(See, 56.1 at ¶¶ 12, 13).*

3

Officer Andoos proceeded to the SUV at which time Jacqueline was placing the children in the rear passenger side of the SUV, Jacqueline then went to enter the SUV in the front passenger seat when Andoos placed his hand on the front passenger door to prevent Jacqueline from entering and stated to her "Ma'am, I'm sorry, I cannot let you leave. I need to know who called the police and why. I would be derelict in my duty if I didn't find out what is going on here. I want to make sure everyone is okay. I don't know who you are and who these children are. Can you please tell me what's going on and who called the police." *(See, 56.1 at ¶¶ 15-16)*. Jacqueline responded "I said we don't fucking need you." *(See, 56.1 at ¶ 16)*.

Jacqueline then allegedly pushed Andoos and tried to open the door but Andoos prevented her, Jacqueline then walked back up the pathway to the home and despite that Andoos still had not observed any evidence of domestic violence at the location and he did not attempt to arrest her, Andoos followed Jacqueline back up towards the front porch of the home. *(See, 56.1 at ¶ 17, 18, 22)*. Just prior to Jacqueline walking to the SUV, Officer Brando observed a minor, later identified as J.L., come out a front window of the home on to the porch and proceeded up towards the porch, J.L. did not have any injuries on him. *(See, 56.1 at ¶ 21, 34)*. Jacqueline was now coming back down the stairs to the pathway to go back to the SUV at which time Andoos blocked her path between the steps and the walkway and, believing that Jacqueline had a legal obligation to answer his questions, again stated to her there was a 911 hang-up call, he would be derelict in his duty if he let her leave without finding out who she was, who the children were, why 911 was called and once everything was straightened out she could leave. *(See, 56.1 at ¶ 23-25)*. Jacqueline refused to answer Andoos' questions again responding "I said we don't fucking need you," Andoos tried to prevent Jacqueline from leaving at this time when he claims that Jacqueline pushed him a third

4

time at which time Andoos made a decision to arrest Jacqueline for Harassment and Obstruction of Governmental Administration ("OGA"). *(See, 56.1 at ¶¶ 23-26, 37).*

Around this time Kassim Oliver, Jacqueline's husband, heard Jacqueline screaming and opened the front door and stood at the threshold, seeing Police Officer Waters, he said that the police were not needed at the home, he did not have to tell the police anything and to get out of there. *(See, 56.1 at ¶¶ 27, 29, 42).* Mr. Oliver did not have any observable injuries on him. *(See, 56.1 at ¶ 28).* As Officer Waters was rude to Mr. Oliver and he heard his wife screaming, Mr. Oliver closed the front door and retrieved his iPod Touch ("iPod") to videotape the police officers' actions in front of his home. *(See, 56.1 at ¶ 30).*

Officer Andoos was now trying to handcuff Jacqueline at the top of the steps to the porch by the railing and claims that Jacqueline resisted him by grabbing the railing on the porch with one hand, Andoos had a hold of Jacqueline's left arm while Officer Desenchak moved to Andoos' right side behind Jacqueline who was between the officers and the railing where he took a hold of Jacqueline's right arm. *(See, 56.1 at ¶¶ 38, 46).* Mr. Oliver then turned on the video record function on his iPod holding it in his left hand and opened the front door to the home and exited observing in front of him Jacqueline bent over the railing screaming in pain with Officers' Andoos and Desenchak manhandling his wife. *(See, 56.1 at ¶¶ 31-33; Ex. L, M).* Mr. Oliver then immediately went down the stairs to the porch to the front lawn with the iPod recording and screamed to the Officers that he was recording their actions, he positioned himself on the lawn in front of the porch facing Andoos, Desenchak and Jacqueline to record which was about three feet below the officers. *(See, 56.1 at ¶¶ 33, 39-41, Ex. L, M).* Officer Desenchak claims that Mr. Oliver grabbed his left arm and the back of his neck from behind him causing him to push Mr. Oliver off him prior to Mr. Oliver going down the steps to the lawn, though it is undisputed that Mr. Oliver

was never outside the home before he came out with his iPod recording and the video evidence thoroughly refutes the allegation that Mr. Oliver ever touched Officer Desenchak at any point, let alone in this manner. *(See, 56.1 at ¶ 47, Exhibits L, M)*.

Officer Andoos claims that Mr. Oliver grabbed at his right hand touching it, but did not actually grab it, though Andoos admits that he was unaware of this until he saw the video months later which the Court will see the circumstances of obtaining the video evidence in this case *infra*. *(See, 56.1 at ¶ 48, Ex. L, M)*. Mr. Oliver states that he merely lost his balance as he was on top of a small ledge and his hand only hit the rail to balance himself, the video confirms he clearly did not attempt to interfere with the arrest of Jacqueline. *(See, 56.1 at ¶ 49, Exhibits L, M)*. After Mr. Oliver backed up and continued to record, the minor J.L. became agitated with how the police were handling his mother and ran over to Officer Andoos and jumped on his back and put Andoos in a headlock, Officer Brando followed over and grabbed J.L. to pull J.L. off Andoos and Officers Andoos, Desenchak, Brando, J.L. and Jacqueline shifted over on the porch toward their right to the end of the porch on to the railing. *(See, 56.1 at ¶¶ 34, 52, 53, Ex. L, M)*. Around this same time as Mr. Oliver was filming this, despite the fact that he was several feet away from the Officers, despite that Officer Waters did not see Mr. Oliver touch any of the Officers, Officer Waters grabbed Mr. Oliver and pulled him away towards the walkway. *(See, 56.1 at ¶ 51, Ex. L, M)*.

The railing to the side of the porch broke which caused Officers Brando, Andoos, J.L. and the small male child to fall to the ground onto the lawn below, injuring Officer Brando who remained prone on his back on the ground. *(See, 56.1 at ¶ 53, Ex. L, M)*. Mr. Oliver continued to film the officers' action from the lawn after the railing broke. *(Ex. L)*. Plaintiff Joanna Pippins ("Joanna"), Jacqueline's daughter, was standing in the bathroom on the second floor of the home when she heard a commotion outside and ran down the stairs of the home, exited out the front door

of the home to the porch and saw a lot of police officers on her property with a police officer holding her mother on the right side of the porch. *(See, 56.1 at ¶¶ 55, 56).* Joanna was wearing gray sweatpants and a turquoise shirt with a scarf on her head. *(See, 56.1 at ¶ 56)* Joanna walked down the steps to the lawn and observed J.L. on the ground with a police officer holding him, she also observed Mr. Oliver recording with his iPod so she decided to go back into the home to retrieve her iPhone to record the police officers' actions. *(See, 56.1 at ¶¶ 57, 58).*

Joanna then goes back into the home to retrieve her iPhone, she comes back out of the home out of the side door and turns on the video record function to her iPhone and begins to record what is occurring, she sees Mr. Oliver recording in the same area she was when she left to go to get her phone. *(See, 56.1 at ¶ 59, Ex. L, M).* After the railing broke Mr. Oliver had picked up his minor son with his right hand, who had fallen off the porch when the railing broke, to clear him from the area and continues to record the actions of the police officers with his left hand. *(See, 56.1 at ¶ 60, Ex. L, M).* Mr. Oliver takes his son back over to the SUV and then attempts the record the officers' actions with regard to J.L. attempting to get the badge numbers of the officers involved. *(See, 56.1 at ¶ 61, Ex. L, M).* Mr. Oliver then backs up off the area and records Officer Desenchak and asks him to let his wife go because she needs to take his infant daughter to the Doctor because she has a brain tumor, Desenchak states she is under arrest and cannot go. *(See, 56.1 at ¶¶ 61, 62, Ex. L, M).*

At this point Police Officer John Olnowich ("Olnowich") arrives on the scene and immediately focuses on Mr. Oliver and tells him to step back several times and strikes Mr. Oliver in the chest with his hands several time, Mr. Oliver repeatedly steps back each time until he is well clear of the area the officers are in with J.L. and Jacqueline while he alerts Officer Olnowich that he is recording. *(See, 56.1 at ¶¶ 64, 65, Ex. L, M).* Mr. Oliver sees the window and the front door

to the home wide open and begins to tell Officer Olnowich he is not going back to the area of police activity but wants to go back to the house as he wants to secure the home, Olnowich responds that he cannot go back to the house and if he does he will be arrested for OGA. *(See, 56.1 at ¶ 65, Ex. J, M)*.

Mr. Oliver repeatedly asks Officer Olnowich to stop pushing him and then sees his infant daughter who was outside the SUV trying to get into it, Mr. Oliver starts to walk away parallel to the sidewalk, away from the police activity, and begins to walk while calling Joanna to take his iPod and attempts to hand the iPod to Joanna. *(See, 56.1 at ¶ 66, Ex. L, M)*. NCPD Lt. Michael Holfester ("Holfester") arrives on the scene at this time and immediately focuses on Mr. Oliver and runs towards Mr. Oliver, both Lt. Holfester and Officer Olnowich tackle Mr. Oliver to the ground while yelling "get down." *(See, 56.1 at ¶¶ 66, 67, 70, Ex. L, M)*. Joanna is able to catch Mr. Oliver's iPod as Officer Olnowich presses his baton to the back of Mr. Oliver's neck as Mr. Oliver goes to the ground, Mr. Oliver is not trying to resist the Officers though Lt. Holfester grabs a hold of Mr. Oliver's left arm while Olnowich grabs Mr. Oliver's right arm and twists it causing injury to his right shoulder now with the weight of the two officers on him as he is screaming that he is not resisting. *(See, 56.1, ¶ 67 at Ex. L, M)*.

Joanna had caught Mr. Oliver's iPod while the officers tackled him to the ground and was now attempting to video record with both her iPhone and Mr. Oliver's iPod ("devices") the arrest of Mr. Oliver and the unnecessary force used by Holfester and Olnowich in arresting Mr. Oliver. *(See, 56.1 at ¶¶ 70, 71, Ex. L, M)*. As Joanna is recording a distance away from Mr. Oliver's arrest without any interference, a police officer pushes Joanna to the ground into bushes causing both the iPhone and iPod to fall to the ground while still recording. *(See, 56.1 at ¶ 71, Ex. L, M)*. Joanna then stands up and is immediately pushed back down to the ground a second time and is arrested

8

and handcuffed by Officer Waters. *Id.* Joanna was then seated on the ground in handcuffs and observed the iPhone and iPod on the ground near her, a short time later the same police officer that was holding her mother, Officer Desenchak, picks up the iPhone and iPod and places them in his pocket. *(See, 56.1 at ¶ 72).* When Joanna and Mr. Oliver saw Mr. Oliver's iPod on the ground while they were handcuffed it did not have damage to the glass. *(See, 56.1 at ¶ 100).* Both Mr. Oliver and Joanna are placed in police cars and driven to the First Precinct, Joanna was barefoot when taken to the Precinct and not given an opportunity to get shoes after her arrest. *(See, 56.1 at ¶ 68, 73).*

After the arrests, Officer Desenchak recalls recovering Mr. Oliver's iPod off the ground but denies he recovered Joanna's cellphone off the ground. *(See, 56.1 at ¶ 74, Ex. L, M).* Shortly thereafter, Detective Brian Parpan ("Parpan") is assigned to the case and arrives at 1 Catherine Place to investigate. *(See, 56.1 at ¶ 74).* Later that day on July 12, 2012, Detective Parpan claims to have received both devices from Officer Desenchak who told him there was possible video of the incident on one or both devices. *(See, 56.1 at ¶¶ 74, 95).* Detective Parpan placed the iPhone and iPod in a brown paper bag without markings and did not voucher the same as either personal property or evidence obtained from Joanna and Mr. Oliver, he then placed the paper bag in his personal locker at the First Precinct. *(See, 56.1 at ¶ 95)* At the First Precinct in Baldwin both Mr. Oliver and Joanna were processed for the arrest including being fingerprinted and photographed, placed in holding cells, held overnight and brought in police custody the next morning, July 13, 2012 for arraignment. *(See, 56.1 at ¶ 75).*

Lt. John Pizzimenti ("Pizzimenti") was the Desk Lieutenant at the NCPD First Precinct on July 12, 2012 whose duties included talking to the police officers making the arrests, reviewing the paperwork and had decision making authority as to whether or not charges would be brought

against arrestees. (See, 56.1 at ¶ 76). Lt. Pizzimenti reviewed the accusatory instruments prepared by Officer Waters with regard to charging Plaintiffs Kassim Oliver and Joanna Pippins each with OGA and Resisting arrest. (See, 56.1 at ¶ 77). Lt. Pizzimenti observed Officer Waters sign the accusatory instruments and authorized the filing of charges of OGA and Resisting Arrest against both Kassim Oliver and Joanna Pippins. (See, 56.1 at ¶ 78).

Accusatory instruments were filed against both Mr. Oliver and Joanna charging each with Obstruction of Governmental Administration and Resisting Arrest, both charges Class A Misdemeanors under New York State Law. (See, 56.1 at ¶ 79, Ex. Q, R). Officer Waters is listed as the arresting Officer of both Mr. Oliver and Joanna, though he was not involved in the arrest of Oliver and denies he was involved in the arrest of Joanna. (See, 56.1 at ¶¶ 67, 68, 79-83). At the arraignment, Joanna entered a plea of not guilty was released on her own recognizance by the Honorable Helen Voutsinas of the Nassau County District Court. (See, 56.1 at ¶ 92). Mr. Oliver also entered a plea of Not Guilty before Judge Voutsinas and was held on $1,000.00 bond or $500.00 cash bail, which he was unable to post, his matter was adjourned to July 17, 2012. (See, 56.1 at ¶ 93).

Mr. Oliver appeared before the Honorable Susan T. Kleuwer of the Nassau County District Court on July 17, 2012 at which time counsel was assigned to Mr. Oliver as he was indigent, counsel requested an adjournment to July 18, 2012 for an application pursuant to Criminal Procedure Law ("CPL") § 170.70. (See, 56.1 at ¶ 94) On July 18, 2012, counsel made application pursuant to CPL § 170.70 for Mr. Oliver to be released in his own recognizance as the accusatory instrument before the Court was not an Information, the application was granted by Judge Kleuwer. Id. Mr. Oliver was released from the Nassau County Correctional Center the night of

July 18, 2012 after spending six days in jail after his arraignment, Mr. Oliver was forced to walk home from the jail that night. *Id.*

Mr. Oliver and Joanna informed their respective counsels that they had recorded the events that led to their arrests, counsels then made a request from the Nassau County District Attorney's ("DA") Office for copies of the video evidence. *(See, 56.1 at ¶ 96)*. The Deputy Bureau Chief of the Major Offense and County Court Trial Bureaus' of the DA's Office, Daniel Looney, contacted counsel for Mr. Oliver and Joanna and obtained consent to view the video at a meeting that was arranged for September 14, 2012 at the DA's Office. *(See, 56.1 at ¶¶ 96, 97)*. The meeting was attended by counsels for Mr. Oliver and Joanna, Joanna, ADA's Daniel Looney and Kimberly Stevenson and Detective Parpan, who brought the brown paper bag with the two devices which had been stored in his personal locker since July 13, 2012; Mr. Oliver was unable to attend but gave the code to unlock his iPod to either Joanna or his attorney. *(See, 56.1, ¶¶ 97-99)*. When Mr. Oliver's phone was removed from the paper bag the glass screen to the iPod was broken. *(See, 56.1 at ¶ 100)*.

When Mr. Oliver's cell phone was turned on and unlocked with his code the video could not be found in the place it defaults to on an iPod, in the camera function of the phone, despite the fact that videos from prior to July 12, 2012 were there. *(See, 56.1 at ¶ 101)*. When an attempt was made to unlock Joanna's iPhone a screen on the phone would not allow Joanna's code to be entered and showed an error message which only occurs when a person tries to enter the incorrect code at least six times, the phone was locked in a manner that it would take years before it could be unlocked with the correct code. *(See, 56.1 at ¶¶ 102, 106)*. An agreement was made between the DA's Office and counsels for Mr. Oliver and Joanna to allow the devices to be examined by the Office of the Secret Service in Brooklyn, the DA's Office kept custody of the devices and

11

forwarded them to Brooklyn when they were later examined by Agent John McKenna of the Bureau of Alcohol, Tabacco & Firearms assigned to the Electronic Crime Force Bureau. *(See, 56.1 at ¶¶ 103, 104).*

Agent McKenna was able to find the video taken of the incident on July 12, 2012 on Mr. Oliver's iPod using software from a company called Cellebrite, though it was not in the place where the iPod would normally default to save it on the iPod. *(See, 56.1 at ¶ 105).* Agent McKenna was not able to recover video from Joanna's iPhone as he could not get past the same screen which was observed at the September 14, 2012 meeting, but he was able to confirm that screen only locks the iPhone when someone attempts to unlock the phone with the incorrect password at least six times and that there was a video from the relevant time period of the incident that was recorded on the iPhone on July 12, 2012. *(See, 56.1 at ¶¶ 106, 107).*

On February 5, 2015 after Joanna made approximately ten court appearances, the charges of OGA and Resisting Arrest were dismissed against her upon application of the DA's Office after they viewed the video recovered from Mr. Oliver's iPod. *(See, 56.1 at ¶ 108; Ex. Y).* Kassim Oliver made a total of 23 Court Appearances in the Nassau County District Court and a seven day trial was held before the Honorable Sharon Gianelli of the Nassau County District Court. *(See, 56.1 at ¶ 109).* Judge Gianelli dismissed the charges of OGA and Resisting Arrest against Mr. Oliver by Trial Order of Dismissal pursuant to CPL § 290.10(1) on December 17, 2013 without the case going to the jury. *(See, 56.1 at ¶ 109; Ex. Z).*

## STANDARD OF REVIEW ON A MOTION FOR SUMMARY JUDGEMNT PURSUANT TO RULE 56

Pursuant to FRCP Rule 56, summary judgment is proper if no genuine issues of material fact can be found in the pleadings, depositions, admissions or affidavits such that the moving party

is entitled to judgment as a matter of law.  FRCP 56(c), see also, Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  The moving party bears the burden of establishing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  "When the movant demonstrates through competent evidence that no material facts are genuinely in dispute, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990), quoting, FRCP 56(e).  The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture. Western World, 922 F3d at 121; Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).  "Summary judgment is appropriate only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003).  For the following reasons, Plaintiffs submit that summary judgment is appropriate on their behalf.

## ARGUMENT

## POINT I

## THE PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THE 42 U.S.C. § 1983 CLAIMS FOR FALSE ARREST AND FALSE IMPRISONMENT

The elements of a false arrest claim under § 1983 and the Fourth Amendment are substantially similar to those of a false arrest claim under New York State law. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).  Plaintiff must show:  "(1) that defendants intended to confine her; (2) that she was conscious of her confinement; (3) that she did not consent to be confined; and (4) that the confinement was not otherwise privileged." Brewton v. City of New York, 550

F.Supp.2d 355, 363 (E.D.N.Y 2008), citing, Singer v. Fulton County Sheriff, 63 F.3d 110, 118

(2d Cir. 1985); Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994). Further, Plaintiff's 42

U.S.C. § 1983 false imprisonment claim is incorporated herein as the elements for a false arrest

and false imprisonment claim under this section are identical. Mitchell v. Home, 377 F.Supp.2d

361 (S.D.N.Y 2005), citing, Singer, 63 F.3d at 117.

There can be no question that no genuine issue of material fact exists with regard to the

first three elements.  Unquestionably, when the police officers placed handcuffs on both Mr.

Oliver and Joanna, placed them in custody and detained them overnight for arraignment, the

Defendant's intended to confine both of them. (See, 56.1 at ¶ 68, 71, 72, 75).  Mr. Oliver and

Joanna certainly were conscious of their confinement and did not consent to the confinement. Id.

The confinement was not otherwise privileged since there was no probable cause to arrest either

Mr. Oliver or Joanna for any crime. "Probable cause to arrest exists when the authorities have

knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable

caution in the belief that an offense has been committed by the person to be arrested." Boyd, 336

F.3d at 75-76 (citation omitted).

There are no material facts in dispute which would establish the officers has probable

cause to arrest Mr. Oliver or Joanna for OGA in the Second Degree, a Class A misdemeanor,

pursuant to P.L. §195.05. This section of the Penal Law states:

> A person is guilty of obstructing governmental administration when he
> intentionally obstructs, impairs or prevents the administration of law or other
> governmental function, or prevents or attempts to prevent a public servant from
> performing an official function, by means of intimidation, physical force or
> interference, or by means of any independently unlawful act or by means of
> interfering, whether or not physical force is involved, with radio, telephone,
> television or other telecommunications systems owned or operated by the state, or
> a county, city, town, village, fire district or emergency medical service or by means
> of releasing a dangerous animal under circumstances evincing the actor's intent that
> the animal obstruct governmental administration.

There are no material facts in this case in dispute which establish that the police were performing an "official function" as that term is defined in P.L. § 195.05. People v. Offen, 96 Misc. 2d 147 (N.Y. Crm. Ct. 1978), cited with approval in, In re Davan L., 91 N.Y.2d 88 (1997). While an officer almost always has a right to approach an individual and request information by asking questions, no one is obligated to answer those questions. The mere fact that the officers were on duty cannot be sufficient to be an "official function" as it would render that term meaningless with regard to the statute. Indeed the officers' actions with regard to Jacqueline Pippins did not create an official function. More importantly, there are no material facts in dispute to establish probable cause that Mr. Oliver or Joanna obstructed an investigation "by means of intimidation, physical force or interference, or by means of any independently unlawful act." See, P.L. §195.05. Prior to being told that they were under arrest, there are no genuine material facts in dispute to establish probable cause that either Plaintiff "physically interfered" with the police officers. The interference must actually be physical in nature. People v. Case, 42 N.Y.2d 98 (1977). Case further made it clear that words alone cannot constitute physical interference. "Under the express provisions of the statute, the interference would have to be, in part at least, physical in nature." Case, 42 N.Y.2d at 102. To suggest that words alone could constitute a violation of OGA "would mean that there would be no outer limits to the statute." Case, 42 N.Y.2d at 103. There are no material facts in dispute which establish that either Mr. Oliver or Joanna attempted to physically stop or interfere with the officers abilities to arrest either Jacqueline or J.L. at any time on July 12, 2012.

The 911 call cannot be said to have created reasonable suspicion to believe that domestic violence was occurring at the home. The mere fact that there was a 911 hang-up and a male's voice could be heard in the background did not establish reasonable cause to believe that an act of domestic violence had or was occurring at the home. See, Ex. C. There was no threat made

and Jacqueline was clearly calm and matter of fact that the call was a mistake. There was no concern by the operator to ask a follow up question regarding the male's voice or whether domestic violence was occurring. When the officers arrived at the home it is undisputed that they observed nothing to believe that an act of domestic violence occurred at the home, neither Jacqueline, nor the two small children, had any visible injuries. (*See, 56.1 at ¶¶ 7, 14*).

Even if Officer Andoos was justified in questioning Jacqueline, Jacqueline clearly had the right to refuse to answer Officer Andoos' questions and she made it clear to Officer Andoos' that she did not wish to speak to him by telling him to get out of there, nobody needs the police, and that she did not have to tell him anything. (*See, 56.1 at ¶¶ 11, 12*). There are no facts to establish reasonable suspicion that Jacqueline had, was or was about to commit a crime, let alone domestic violence. At this point when Officer Andoos and Waters blocked Jacqueline's path they illegally seized Jacqueline in violation of her Fourth and Fourteenth Amendment rights and Article I, § 12 rights under the New York State Constitution by blocking her from continuing to walk down the path with the children to the S.U.V. People v. DeBour, 40 N.Y.210 (1976), (*See, 56.1 at ¶ 12*). Jacqueline unquestionably had a Constitutional right not to answer Officer Andoos' questions and to walk away from him without interference. Dancy v. McKinley, 843 F.3d 93 112 (2d Cir. 2016); People v. Howard, 50 N.Y.2d 583, 586 (1980). Officer Andoos' claim that Jacqueline pushed past him at this point is not credible and contradicted by Officer Desenchak's testimony that Andoos' moved out of her way and Jacqueline's hands were full as she was holding one child in her right hand and the other in her left hand the entire time she was walking down the walkway. (*See, 56.1 at ¶¶ 8, 11, 12*). Regardless, even if she did push past him in response to the illegal seizure, such an act does not constitute reasonable suspicion absent other articulable indicia of criminal activity, which there was none. People v. Greene, 135 A.D.2d 449, 451 (1st Dept. 2001), (*See, 56.1 at ¶ 14*).

Officer Andoos did not obtain any reasonable suspicion to believe that Jacqueline had, was or was about to commit a crime between the time that she walked down the path and he admittedly blocked her entry to the SUV. (*See, 56.1 at ¶¶ 14, 15, 16*). Once again, Andoos

illegally seized Jacqueline by preventing her from leaving the scene by blocking her entry and even if the Court were to believe that Jacqueline attempted to push past Andoos to gain entry to the SUV, that act did not constitute reasonable suspicion absent other articulable indicia of criminal activity, which there was none. *Id.*, People v. Greene, 135 A.D.2d at 451. Jacqueline again had a right to walk back up towards her home and once again Andoos gained no information to believe that she had, was or was about to commit a crime and he again illegally seized Jacqueline when he blocked her path back down the stairs of the porch when she attempted to walk back towards the SUV. (*See, 56.1 at ¶¶ 17-19, 22-24*). Without question Officer Andoos' belief that Jacqueline had an obligation to answer his questions and that he had a right to keep her at the scene was against clearly established Constitutional principles. (*See, 56.1 at ¶ 25*). Once the officers did not see any reason to suspect criminal activity and Jacqueline clearly refused to answer questions, they should have left the scene. Had they, the unfortunate events that followed would never have occurred and they only did in response to the officers' clearly illegal and unconstitutional actions. Therefore, the arrest of Jacqueline was illegal and consequently the officers were not performing an official function at that time. As the arrest of Jacqueline was not authorized, any resisting arrest charge lodged against her was without probable cause. People v. Peacock, 68 N.Y.2d 675, 677 (1986).

Officer Desenchak's claim that Mr. Oliver grabbed his left arm and his neck when he came out of the home as Desenchak attempted to arrest Jacqueline is unquestionably refuted by the video which conclusively demonstrates that Mr. Oliver never touched Officer Desenchak at any time. *See, Ex. L, M.* Officer Andoos' claim that Mr. Oliver brushed his hand somehow interfered with the arrest of Jacqueline cannot provide probable cause to arrest Mr. Oliver for OGA for two reasons. The Court should note that this alleged action occurred prior to J.L. grabbing Andoos in a headlock as confirmed by video. *See, Ex. L, M.* First, as demonstrated above, the Officers were not engaged in an official function at this time, an essential element of OGA. Even if Andoos was somehow justified in arresting Jacqueline, there are no facts to demonstrate Mr. Oliver's intent was to obstruct Officer Andoos by merely balancing himself at

17

this time, nor are there any facts that the action actually physically prevented Andoos from attempting to place Jacqueline under arrest. (*See*, 56.1 *at* ¶¶ *48, 49*) Indeed, Officer Andoos admits he was not even aware that Mr. Oliver brushed his hand until he viewed the video months later. Nor can Officer Andoos articulate how a millisecond brush somehow prevented him from placing Jacqueline under arrest, let alone Mr. Oliver's intent to do so.

Mr. Oliver's actions with Officer Olnowich cannot serve as the basis for probable cause to believe he intended to interfere with the investigation. Though Officer Olnowich tells Mr. Oliver to step back numerous times, the video demonstrates that Mr. Oliver did so each time. Even if he did not, "[f]ailing to obey a police order, in and of itself, does not constitute a circumstance that gives rise to probable cause for an arrest for [OGA]." <u>Dowling v. City of New York</u>, No. 11-CV-4954, 2013 WL 5502867 at *4 (EDNY 2013), <u>citing</u>, <u>Jackson v. City of New York</u>, 959 F.Supp.2d 219, 230 (EDNY 2013). The video conclusively establishes that Mr. Oliver's only intent was to record what he believed to be wrongful actions of the police officers. Therefore, Mr. Oliver was not obligated to follow Officer Olnowich's command to step back or not go into the home. Neither actions actually interfered with the Officers' ability to arrest either Jacqueline or J.L. Even if he were obligated, the video evidence demonstrates that he did follow Olnowich's commands as he stepped back several times and when Officer Olnowich and Lt. Holfester jumped on Mr. Oliver, Mr. Oliver was clearly walking parallel to the sidewalk away from where the Officers were making arrests. *Seem Ex. L, M.* There is no evidence that Mr. Oliver physically interfered with any of the Officers' actions by doing that act of simply walking away. Therefore, there is no evidence that Lt. Holfester and Officer Olnowich had probable cause to arrest Mr. Oliver for OGA as there is no probable cause to believe he physically interfered with the officers, an essential element of OGA. <u>People v. Case</u>, 42 N.Y.2d 98 (1977).

There are no material facts in dispute which would have established probable cause to believe that Plaintiffs committed the crime of Resisting Arrest, a Class A Misdemeanor, pursuant to P.L. § 205.30. This section of the Penal Law states:

18

A person is guilty of Resisting Arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person.

It has been conclusively established in New York that one cannot resist arrest unless the arrest is an authorized arrest, that is, the officer must have an independent probable cause to believe that the individual committed another crime. Peacock, 68 N.Y.2d at 677. As there is no probable cause to believe that Mr. Oliver had an intent to or physically interfered with the officers, his arrest was not authorized. Therefore, there was no probable cause to believe that Mr. Oliver's arrest was authorized, an essential element of Resisting Arrest. Peacock, 68 N.Y.2d at 677.

There are no facts to establish probable cause to believe that Plaintiff Joanna Pippins committed the crimes of OGA or Resisting Arrest. The only testimony regarding Joanna Pippins' actions are from Officers' Andoos, Brando and Waters. Officer Andoos claims that Joanna came close to him and Officer Brando after the railing broke, put him in fear as he was hurt, that he told her to step back but admits Joanna never touched him. (See, 56.1 at ¶ 85). Officer Brando claims that he first noticed Joanna while on the ground injured after the railing broke, heard Joanna yelling that he is only fourteen, cursing and calling Brando a racist, heard officers telling Joanna to get away and only observed her when he glanced up and saw her nearby but admits Joanna did not touch him, nor did he observe her touch any officers. (See, 56.1 at ¶¶ 87-88). Officer Waters claims that Joanna refused to stay out of the area of Officer Brando but did not physically observe her touch any police officers. (See, 56.1 at ¶ 82). None of these actions establish probable cause to believe that Joanna physically interfered with the actions of the officers even if they were performing an official function.

Officer Andoos offers no articulable subjective facts which would justify his conclusory statement that he was in fear of Joanna. People v. Thomas, 51 Misc. 3d 341, 351-352 (Crm. Ct. Kings 2016). Nor is there any objective allegation that Joanna placed any officer in fear. Id. Joanna's mere utterances of profanity and her opinion that the officers are racist are clearly protected First Amendment speech and there are no allegations that Joanna made any threats to

19

any police officers. *Id.;* Gooding v. Wilson, 405 U.S. 518 (1972); Chaplinsky v. New Hampshire, 315 U.S. 568 (1942); City of Houston v. Hill, 482 U.S. 451, 462-263 (1987). Further, any claim that Joanna failed to follow orders to step back without any proof of physical interference cannot provide probable cause to believe that she physically interfered with the police officers regardless of whether they were performing an official function. Dowling v. City of New York, No. 11-CV-4954, 2013 WL 5502867 at *4 (EDNY 2013), citing, Jackson v. City of New York, 959 F.Supp.2d 219, 230 (EDNY 2013). Therefore, there are clearly no facts to establish probable cause to arrest Plaintiff Joanna Pippins for OGA as there are no facts to establish probable cause she physically interfered with the officers.

There are no facts to establish that Joanna resisted arrest. Clearly, there are no facts to establish that the arrest of Joanna was authorized. Indeed, no police officer even admits to arresting Joanna. *(See, 56.1 at ¶¶ 83-85).* No officer alleges any facts to establish that Joanna resisted any arrest as no officer claims to have viewed the arrest of Joanna let alone seeing her take any actions to resist.

Lt. John Pizzimenti was the Desk Lieutenant at the NCPD First Precinct on July 12, 2012 and as part of his duties he is tasked with reviewing the misdemeanor complaints charging each Plaintiff with OGA and Resisting Arrest and making a decision as to whether the charges should go forward and be filed against the Plaintiffs. *(See, 56.1 at ¶¶ 76-77).* Lt. Pizzimenti then watched Officer Waters sign each accusatory instrument filed against the Plaintiffs, verified his signature and authorized the filing of the accusatory instruments in this case. *(See, 56.1 at ¶ 7, Ex. Q, R).*

The accusatory instrument filed against Kassim Oliver clearly did not provide probable cause for the charge of OGA against him and therefore, the Resisting Arrest charge could not provide probable cause since there was no language that justified that the arrest of Mr. Oliver was authorized. *See, Ex. Q.* The accusatory instrument states that Mr. Oliver refused to answer the officers' questions, however, as demonstrated above this act could not have possibly constituted OGA as such refusal was constitutionally protected. Dancy v. McKinley, 843 F.3d 93 112 (2d Cir. 2016); People v. Howard, 50 N.Y.2d 583, 586 (1980). The accusatory instrument then makes

the conclusory statement that "when the defendant shoved the officer, he responded by attempting to arrest the defendant for obstructing governmental administration by putting her arm behind her back." *See, Ex. Q.* This statement fails to plead an element of OGA since no one has ever alleged that Mr. Oliver shoved an officer on July 12, 2012 and it refers to a female, indeed it is clearly an allegation meant to be charged against Jacqueline, not the male Mr. Oliver. None of the supporting depositions supported this allegation. *See, Ex. H, S, T.* The proper elements of no underlying crime was stated in the accusatory instrument charging Resisting Arrest. Under no reading of this complaint can it be stated that it charges the elements of OGA and it should have never been signed off on by Lt. Pizzimenti and filed with the Nassau County District Court against Mr. Oliver.

The accusatory instrument filed against Joanna Pippins purports to state that Officer Waters personally observed Joanna Pippins "attempting to physically stop the lawful arrest of [J.L.] by pushing and grabbing officers at the scene. While being placed under arrest for the above offense, the defendant did flail her arms in an attempt to prevent her own arrest." *See, Ex. R.* However, Lt. Pizzimenti could not have possibly gained this information from Officer Waters as Officer Waters states that he never saw Joanna physically touch any police officers or that he was involved in her arrest. (*See,* 56.1 *at* ¶¶ 82, 83). None of the supporting depositions support the allegations that Joanna Pippins physically touched or interfered with any police officers in any way or resisted her arrest. *See, Ex. H, S, T.* Under no reading of this complaint can it be stated that there was any witness to support the charges the of OGA against Joanna and it should have never been signed off on by Lt. Pizzimenti and filed with the Nassau County District Court against Joanna Pippins. Further, not only does the complaint fail to support any charges of a witness observing factual allegations to support the OGA charge, the complaint fails to support any charges of a witness observing factual allegations to support the Resisting arrest charge against Joanna. As Lt. Pizzimenti allowed charges to proceed against both Plaintiffs that failed to provide probable cause to believe they committed a crime, Plaintiffs have demonstrated prima facie evidence of summary judgment against him for false arrest/imprisonment.

Plaintiffs have sufficiently demonstrated that there are no material facts in dispute with regard to all four elements of their false arrest claims entitling both Plaintiff Kassim Oliver and Plaintiff Joanna Pippins to support granting Summary Judgment on their false arrest claims. Plaintiffs have demonstrated prima facie evidence that there are no genuine issues of material facts in dispute against the Defendants that (1) that defendants intended to confine each of them; (2) that each was conscious of their confinement; (3) that each did not consent to be confined; and (4) that the confinement was not otherwise privileged as there were facts to establish probable cause to believe that Plaintiff Kassim Oliver and/or Joanna Pippins for OGA or Resisting Arrest. Further, summary judgment should be granted as to Lt. Pizzimenti as he allowed the charges to filed against Plaintiffs even though they clearly did not support that Plaintiffs committed either the crime of OGA or Resisting Arrest.

## POINT II

## THE PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THE 42 U.S.C. § 1983 CLAIM FOR MALICIOUS PROSECUTION

"To succeed on a claim for malicious prosecution, the plaintiff must show that a prosecution was initiated against him, that it was brought with malice but without probable cause to believe that it could succeed and that the prosecution terminated in favor of the accused plaintiff. Martinez v. City of Schenectady, 97 N.Y.2d 78, 84 (2001); Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 130 (2d Cir. 1997). Probable cause, in the context of malicious prosecution, has been described as such facts and circumstances as would lead a reasonably prudent person to believe the Plaintiff guilty." Boyd, 336 F.3d at 76. A lack of probable cause creates an inference of malice. Boyd, 336 F.3d at 78; Ricciuti, 124 F.3d at 131. Plaintiffs have demonstrated the lack of probable cause for the charges of OGA and Resisting Arrest against both Mr. Oliver and Joanna above. There are no genuine material issues of fact in dispute that a prosecution in the Nassau County District Court was initiated against both Plaintiff Kassim Oliver and Joanna Pippins in this action. See, Ex. Q, and R. Nor is there any genuine material issue of

22

fact in dispute that the prosecution terminated in favor of the accused Plaintiffs Kassim Oliver, *see*, *Ex. Z*, and Plaintiff Joanna Pippins, *see*, *Ex. Y*.

The Plaintiff submits that there is no genuine material issue of fact in dispute that the prosecution was brought with malice. Evidence that the police witnesses "have not made a complete and full statement of facts . . . that they have misrepresented or falsified evidence . . . or otherwise acted in bad faith." establishes malice. Boyd, 336 F.3d at 76, quoting, Colon v. City of New York, 60 N.Y.2d 78, 82-83 (1983). In the present matter, the evidence taken in the light most favorable to the Defendants establishes that this prosecution was brought and continued against Kassim Oliver and Joanna Pippins because the officers did not like that they were recording the Officers' illegal actions and they arrested and prosecuted them in retaliation for the exercise of their First Amendment rights. The malice is further established by the officers in this matter falsifying allegations against both Kassim Oliver and Joanna Pippins, the attempt to destroy Mr. Oliver's video recording, their success in destroying the video recording made by Joanna Pippins and the change in theory as to how Mr. Oliver committed the crime of OGA at trial after the video recording shot by Mr. Oliver was recovered.

With regard to Kassim Oliver, it is indisputable that the original charges brought against Mr. Oliver were patently false as proven by the video recording shot by Mr. Oliver on July 12, 2012. The charges brought against Mr. Oliver factually alleged that Mr. Oliver obstructed Officer Andoos while attempting to conduct an investigation and obstructed the lawful arrest of Jacqueline. *See, Ex. Q*. This charge was factually supported by annexation of the supporting deposition of Officer Desenchak which stated that "[a]s P.O. Andoos and I were attempting to handcuff Defendant [Jacqueline] Pippins, defendant Oliver interfered with the arrest of defendant Pippins by attempting to pull me away from assisting P.O. Andoos; defendant Oliver grabbed my left arm and attempted to grab me around the neck causing me to direct some of my attention towards him in order to physically push him off me." *See, Ex. H*. The video recording recovered from Mr. Oliver's iPod, whether watched in real time or the slowed down version created by the DA's office, conclusively demonstrated that Mr. Oliver never grabbed P.O. Desenchak's left arm,

23

grabbed his neck or ever touched Officer Desenchak on July 12, 2012, nor did Officer Desenchak ever push Oliver away. *See, Ex. L, M.*

Evidence of malice against Joanna is the fact that accusatory instruments were filed against her falsely accusing Joanna of pushing and grabbing officers at the scene during the arrest of J.L. even though no police officers observed Joanna ever push or grab, let alone touch, a police officer on July 12, 2012. *See, Ex. R,* (*See, 56.1 at* ¶¶ 82-91). Officer Waters was the arresting officer on the case and drafted the accusatory instruments against Joanna Pippins though he says he only observed her refuse to obey orders to stay out of the area of Brando and she is not accused with regard to that act, which, as demonstrated above does not constitute OGA in itself. *Id.* Waters denies arresting and handcuffing Joanna despite the fact Joanna states he is the officer that arrested and handcuffed her. (*See, 56.1 at* ¶¶ 71, 83). None of the other officers admit to arresting and handcuffing Joanna or observing her arrest. (*See, 56.1 at* ¶¶ 82-91). Therefore, there is no evidence that Joanna resisted being arrested.

The malice to both Plaintiffs is further demonstrated by the fact that the video recording on Mr. Oliver's iPod was attempted to be erased and that Joanna's iPhone was attempted to accessed by the incorrect code to unlock it at least six times while the devices were in the full custody of the police department with either Officer Desenchak or Detective Parpan where no one else, including Mr. Oliver or Joanna had access to attempt to destroy the video recordings. (*See, 56.1 at* ¶¶ 67, 71, 72, 74, 95, 99, 100). The facts conclusively demonstrate that the last time that Mr. Oliver and Joanna saw the iPod and iPhone was when they were on the ground still recording after both had been arrested and handcuffed sitting on the ground where they could not possibly access the devices. *Id.* Officer Desenchak picked up both devices from the ground and brought them to the First Precinct on July 12, 2012 when he gave custody of them to Detective Parpan. (*See, 56.1 at* ¶¶ 72, 74, 95). More evidence of the intentional attempt to destroy the video recording on Mr. Oliver's iPod and the destruction of Joanna's recording demonstrating malice is the failure of Detective Parpan to follow police procedure by failing to invoice the devices as either evidence in the case or property of Mr. Oliver and Joanna respectively. (*See, 56.1 at* ¶ 95).

24

Detective Parpan took the unusual step of placing the devices in a brown paper bag and failed to secure it with staples or tape and failed to put any identifying case markings on the bag, indeed he failed to place any identifying markings on the bag. *Id.* Instead of placing the bag with the devices in the First Precinct evidence locker, he took the unusual step of placing the bag in his own personal locker at the precinct. *Id.*

The bag remained in Detective Parpan's custody until such time as Plaintiff's criminal defense attorneys made demands to the DA's Office to view the video evidence after which Detective Parpan was directed to bring the devices to the DA's Office at the September 14, 2012 meeting so that the devices could be accessed and the videos reviewed and recovered. (*See, 56.1 at ¶¶ 95-99*). At that meeting it was discovered that the video recording on Mr. Oliver's iPod had been moved from the default area on the iPod where it would be stored demonstrating an attempt to erase the video and that someone had tried to incorrectly enter the password to Joanna's iPhone at least six times in attempt to unlock it. (*See, 56.1 at ¶¶ 101-102*). These actions could only have been done while in custody of either Officer Desenchak or Detective Parpan. (*See, 56.1 at ¶¶ 72, 74, 95, 99, 100*). This caused the Plaintiffs to enter into agreements with the DA's Office to have a Federal Expert examine the devices and use special software to attempt a recovery of the two videos of which only the video on Mr. Oliver's iPod would be recovered, though the expert was able to determine that Joanna also made a recording on the iPhone at the relevant time period on July 12, 2012. (*See, 56.1 at ¶¶ 104-107*). Further evidence at the attempt to destroy evidence was the fact that Mr. Oliver's iPod did not have damage to it, specifically a cracked glass, when it was on the ground after he and Joanna were arrested but did have damage by the glass being cracked when Detective Parpan produced it at the meeting. (*See, 56.1 at ¶ 100*). These facts together demonstrate that the prosecution was initiated with malice but without probable cause that it could succeed against both Plaintiffs.

Though Joanna Pippins' prosecution was terminated by the DA's office before trial, Joanna still had to make several court appearances prior to trial. (*See, 56.1 at ¶ 108*). Additionally, the charges were not dismissed until the DA's Office obtained and viewed the video recording

from Mr. Oliver's iPod which demonstrated that Joanna never touched the police officers arresting J.L. or physically interfered with the police action. *Ex. L, M.*

Therefore, Plaintiffs have demonstrated that there are no genuine material issues of fact in dispute with regard to the elements of Plaintiffs Malicious Prosecution claim and this Court should grant Plaintiffs Kassim Oliver and Joanna Pippins Summary Judgment as to liability as Plaintiffs have demonstrated that a (1) prosecution was initiated against each Plaintiff, (2) that it was brought with malice but without probable cause to believe that it could succeed and that (3) the prosecution terminated in favor of the accused plaintiff.

## POINT III

## PLAINTIFFS' NEW YORK STATE LAW CLAIMS FOR FALSE ARREST, FALSE IMPRISONMENT AND MALICIOUS PROSECUTION

"The elements of false arrest and malicious prosecution under § 1983 are "'substantially the same as the elements under New York law.'" Boyd, 336 F.3d at 75, citing, Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir. 1992). The elements of false imprisonment are the same as false arrest under New York State law. Broughton v. Shanbarger, 37 N.Y.2d 451, 456-457 (1975). Neither actual malice nor lack of probable cause are elements of a false imprisonment claim. Broughton, 37 N.Y.2d at 457. Plaintiff has previously made extensive arguments with regard to the false arrest and malicious prosecution claims, Plaintiff asks this Court to incorporate those arguments here as the standard is identical for the Federal and State claims.

Plaintiffs are entitled to summary judgment pursuant to Rule 56(c) on their pendent New York State Law claims for the torts of False Arrest, False Imprisonment and/or Malicious Prosecution for the same reasons they are entitled to summary judgment on the Federal Claims.

**POINT IV**

**PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGEMENT ON THEIR
FIRST AMENDMENT RETALIATION CLAIMS**

To establish a claim for retaliation for exercise of Frist Amendment retaliation claim the Plaintiff must demonstrate that "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." Dorsett v. County of Nassau, 732 F.3d 157, 160 (2d Cir. 2013), citing, Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).

The right to video record police officers in public to document the same when a person believes the actions to be illegal is an established right that is a "fundamental and virtually self-evident nature of the First Amendment's protections in this area." Gilk v. Cuffiffe, 655 F.3d 78, 82 (1st Cir. 2011).  The facts of the present matter make it clear that Mr. Oliver and Joanna both alerted the police officers that they were recording their actions and that they did so to record what they believed to be illegal actions taken by the police officers which is a substantial interest. "[T]he dissemination of information relating to alleged governmental conduct . . . 'has traditionally been recognized as lying at the core of the First Amendment.'" Gentile v. State Bar of Nevada, 501 U.S. 1030, 1034-1035 (1991), quoting, Butterworth v. Smith, 494 U.S. 624, 632 (1990). In the present action it is clear that Mr. Oliver and Joanna wanted to document the actions of the police officers which they believed to be illegal.

Plaintiff has further demonstrated that the Defendants actions in this case were motivated or substantially motivated by the exercise of Plaintiffs First Amendment rights to record them. Plaintiffs have demonstrated above that they were arrested without probable cause to believe that they committed a crime, that the Officers were aware that both Plaintiffs were recording their actions, that the two devices were in the custody of police officers at the time of arrest such that the recordings could only be altered by the police officers, that both video recordings were initially lost, that it took a Federal Expert to be able to recover one of the two recordings but

27

unfortunately the second could not be recovered, that Mr. Oliver's iPod was damaged after it was exclusively in the custody of the police by having its glass cracked, that the video recording on Mr. Oliver's phone was moved from its default position and that Joanna's iPhone was tampered with while exclusively in police custody by someone who tried to enter the incorrect password at least six times to unlock the iPhone. This evidence conclusively demonstrates that the illegal arrests of Plaintiffs were motivated by the officers to deny the exercise of the First Amendment rights of Plaintiffs to record the officers' actions.

Plaintiffs have also shown injury in that they were arrested illegally, held overnight for arraignment, Mr. Oliver spent six days in jail following that, had to make numerous court appearances, were denied important evidence in the form of the video recording shot by Joanna Pippins and Mr. Oliver had to face trial on the charges. The Defendants chilled the Plaintiffs free speech rights by attempting to destroy the video recording on the iPod and silenced the Plaintiffs free speech rights successfully destroying the video on the iPhone. Therefore, Plaintiffs have put forth prima facie evidence of entitlement to summary judgment with regard to their First Amendment retaliation claim against Defendants.

## POINT V

### PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT GRANTING PLAINTIFFS DEPRIVATION OF PROPERTY CLAIM

A 42 U.S.C. § 1983 deprivation of property claim has the following elements, "conduct committed by a person acting under color of state law, which deprived the plaintiff of 'rights, privileges or immunities secured . . . by the Constitution or laws of the United States.'" Bower Assoc. v. Town of Pleasant Val., 304 A.D.2d 259, 262 (2003), quoting, Parratt v. Taylor, 451 U.S. 527, 534-535 (1981); see, Town of Orangetown v. Magee, 88 N.Y.2d 41, 49 (1996).

Without any question Officer Desenchak and Detective Parpan were acting under the color of State law when they took custody of the iPod and iPhone. Clearly the Plaintiffs had a protected property interest in the iPod and iPhone as well as the contents in the devices which they could

not be deprived without due process of law. The Plaintiffs protectable property interest was not surrendered when the devices were taken by the police. Milo v. Kralik, 70 A.D.3d 1, 12 (2d Dept. 2009). Further, Plaintiff Kassim Oliver was deprived of his protectable property interest when his iPod was damaged by the police and Plaintiff Joanna Pippins was deprived of her protectable privacy interest when her iPhone was destroyed by the police when it was permanently locked. *Id.* Therefore, Plaintiffs have demonstrated prima facie entitlement to summary judgment on their deprivation of property claims.

## POINT VI

## PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT DENYING THE DEFENDANTS A QUALIFIED IMMUNITY DEFENSE

The Plaintiffs submit that they are entitled to summary judgment dismissing the defense of Qualified Immunity. Qualified Immunity is a legal issue which must be determined by the Court and summary judgment is the appropriate forum. Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993). Qualified Immunity is available so long as conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' Doe v. Phillips, 81 F.3d 1204, 1211 (2d Cir. 1996), cert. denied, 520 U.S. 1115 (1997) (citing, Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine whether a right was clearly established at the time defendant acted, a court should consider (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit courts support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.'" Babi-Ali v. City of New York, 979 F.Supp. 268, 275 (SDNY 1997), citing, Doe, 81 F.3d at 1211.

The rights defined in this case are clear. The law with regard to physical interference for an OGA charge has been clearly defined since 1977, People v. Case, 42 N.Y.2d 98 (1977), and the law regarding that an arrest must be authorized for a Resisting Arrest charge has been clearly

defined since at least 1986. <u>People v. Peacock</u>, 68 N.Y.2d 675, 677 (1986). No reasonable police officer could argue that it was unclear whether the interference had to be physical in nature or whether an arrest must be authorized by probable cause to believe that a person committed another crime for an arrest to be authorized to charge Resisting Arrest.

In the instant matter, the contours of First Amendment principles involved in this case are sufficiently clear. The right to record police activity in public is a clearly established right which has been sufficiently clear since at least November 2011. <u>Higginbotham v. City of New York</u>, 105 F.Supp.3d 369, 380 (SDNY 2015). No reasonable public official could argue that recording the police officers in public is not protected by the First Amendment. Therefore, the Defendants Qualified Immunity defense should be stricken.

As the Plaintiff can demonstrate that there are no genuine material facts in dispute which would justify the Defendants the use of the qualified immunity defense, Plaintiff requests summary judgment pursuant to Rule 56(c) striking that defense.

## CONCLUSION

In Conclusion, Plaintiffs Kassim Oliver and Joanna Pippins ask this Court for the following relief, Summary Judgment pursuant to Rule 56(c) on the following claims, 42 U.S.C. § 1983 for False Arrest and False Imprisonment, 42 U.S.C. § 1983 for Malicious Prosecution, 42 U.S.C. § 1983 for First Amendment Retaliation, 42 U.S.C. § 1983 for Deprivation of Property Plaintiff's pendent New York State Law torts for False Arrest, False Imprisonment and Malicious Prosecution, and denying the Defendants the defense of Qualified Immunity.

Dated: February 3, 2017
     Mineola, New York


cc:    Hon. Leonard D. Wexler

      Rebore, Thorpe & Pisarello, P.C.
      Attn:   Joseph Pusateri, Esq.
      Attorneys for Defendants
      500 Bi-County Boulevard, Suite 214N
      Mineola, N.Y. 11501
      (631) 249-6600

NICHOLAS J. MASSIMO, ESQ.
Massimo & Panetta, P.C.
Attorneys for Plaintiffs
200 Willis Avenue
Mineola, N.Y. 11501
(516) 683-8880

31