UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
KASSIM OLIVER and JOANNA PIPPINS,

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAR 09 2018 ★
LONG ISLAND OFFICE

MEMORANDUM AND ORDER

CV 15-0779

Plaintiffs,

-against-

(Wexler, J.)

COUNTY OF NASSAU, P.O. DAVID
DESENCHAK, P.O. MATTHEW ANDOOS,
P.O. THOMAS WATERS, P.O. NICHOLAS
BRANDO, P.O. JOHN OLNOWICH, LT.
MICHAEL HOLFESTER, LT. JOHN
PIZZIMENTI, and DETECTIVE BRIAN
PARPAN,

Defendants.
-----------------------------------------------------------X

APPEARANCES:

MASSIMO & PANETTA, P.C.
BY:   Nicholas J. Massimo, Esq.
Attorneys for Plaintiff
200 Willis Avenue
Mineola, New York 11501

REBORE, THORPE & PISARELLO, P.C.
BY:   Joseph F. Pusateri, Esq.
Attorneys for Defendants
500 Bi-County Boulevard, Suite 214N
Farmingdale, New York 11735

WEXLER, District Judge:

Before the Court are cross-motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56. Both motions are opposed by the non-moving party. For the following

reasons, Defendants' motion is granted in part and denied in part and Plaintiffs' motion is denied in its entirety.

## BACKGROUND

This is a civil rights action arising out of a 911 telephone call made on July 12, 2012, which resulted in an investigation by Defendants and the subsequent arrest of Plaintiffs. The relevant facts, as set forth below, are taken from the parties' Local Civil Rule 56.1 Statements, unless otherwise noted.

On July 12, 2012, at 11:32:54 a.m., the Nassau County Police Department ("NCPD") received a 911 hang-up call from a residence located at 1 Catherine Place, North Bellmore, New York. At 11:33:03 a.m., 911 operator Donna Abriola ("Abriola") called back the residence at 1 Catherine Place, at which time Jacqueline Pippins answered and advised Abriola that the 911 call had been a mistake. Abriola then dispatched Defendants P.O. Matthew Andoos ("Andoos") and P.O. Thomas Waters ("Waters") to the residence at 1 Catherine Place for a 911 hang-up, possible domestic disturbance.

Upon arriving at the residence, Andoos observed a black female, whom he later identified as Jacqueline Pippins, coming out the front door with two small children. Shortly thereafter, Abriola dispatched additional officers to 1 Catherine Place. Defendants P.O. David Desenchak ("Desenchak") and P.O. Nicholas Brando ("Brando"), who were in plainclothes patrolling the vicinity of 1 Catherine Place, heard Abriola's radio call and responded to the location. Upon arrival, Desenchak and Brando observed Jacqueline Pippins walking down the steps of 1 Catherine Place with a child in each hand, as Andoos was approaching her. None of the officers

observed any injuries on Jacqueline Pippins or the children.

Jacqueline Pippins then proceeded to an SUV parked out front, opened the rear door and placed the two children inside while Andoos stood next to the front passenger side door of the vehicle, with his hand placed on it to prevent Jacqueline Pippins from entering the automobile. Andoos advised Jacqueline Pippins that he could not let her leave without first learning what had taken place and who called 911, to which Jacqueline Pippins responded "I said we don't fucking need you." Andoos then looked through the open window of the rear door of the SUV and asked the two small children if they were okay. Both children responded by stating "Fuck you po-po, Fuck you police. We don't fucking need you." Jacqueline Pippins then walked back toward the front door of the house and Andoos followed.

Jacqueline Pippins next attempted to walk down the steps of the house and Andoos blocked her path. Andoos again explained that he needed to know why 911 was called and that once everything was straightened out, she could be on her way. Jacqueline Pippins refused to answer Andoos' questions and once again stated "I said we don't fucking need you." At that point, Andoos made the decision to arrest Jacqueline Pippins for Harassment and Obstructing Governmental Administration.

Andoos placed Jacqueline Pippins's hands behind her back to arrest her. At the same time, the front door opened and Plaintiff Kassim Oliver ("Oliver") exited the residence onto the front porch. Oliver was holding an Ipod in his hand and told the police they were not needed and to leave. Oliver continued down the steps of the house onto the lawn and advised the police that he was recording Jacqueline Pippins's arrest. Oliver did not have any observable injuries.

Also around this same time, P.O. Brando observed a teenage male, later determined to be Jacqueline Pippins's son, Jonathan Lindsay ("J.L."), exit the right side window of the front of the house onto the porch. Brando proceeded onto the porch and J.L began coming towards him. J.L. stated "I don't care, I'll hit a fucking cop" and began throwing punches at Brando, striking his left shoulder and left neck and face area. J.L. then dropped down quickly, grabbed both of Brando's legs and flipped him over the railing of the porch onto the ground below. As Brando got to his feet, he observed Oliver with his Ipod, who stated that he was recording.

J.L. then jumped onto Andoos's back and placed him in a choke hold while also striking Andoos's head with a closed fist. Brando came to Andoos's aid and attempted to pull J.L. off of Andoos's back. During this time, the officers shifted to the east side of the porch, coming up against the porch railing and causing it to give way. Both Andoos and Brando fell to the ground and were injured. Andoos was able to eventually place J.L. under arrest with the assistance of an off duty New York City Police Officer who had appeared on the scene at this point. Oliver was near Andoos at this point, still recording with his Ipod.

Plaintiff Joanna Pippins ("Pippins") - Jacqueline Pippins's daughter, who was seventeen years old at the time - was inside the residence at 1 Catherine Place when all of the foregoing occurred. Hearing a commotion outside, Pippins exited the residence through the front door and observed the scene on the front lawn. Pippins reentered the home and retrieved her Iphone to record the police officers' actions. Pippins stood on the lawn near where J.L. was located and began recording.

At this point, Defendant Desenchak is holding onto Jacqueline Pippins, who is under arrest. Oliver begins to record Desenchak and asks him to let Jacqueline Pippins go. Desenchak

-4-

advises Oliver that he cannot do that as she is under arrest. Oliver is told to step back multiple times. Oliver advises the officers that he believes his family is being targeted because they are black.

By this time, Defendant P.O. John Olnowich ("Olnowich") arrived on the scene. He observes Oliver recording and tells him to step back. At some point, Oliver attempts to gain entry to the residence, but is precluded from doing so by Olnowich. Olnowich advises Oliver that he cannot go back in the house and that if he does, he will be arrested for Obstructing Governmental Administration. The parties dispute what exactly happens next but ultimately, Olnowich, with the assistance of Defendant Lt. Michael Holfester ("Holfester"), who had arrived on the scene by this time, uses his baton on Oliver's back to force him to the ground. At the same time, Oliver tossed his Ipod to Pippins. Oliver was placed in handcuffs and remained on the ground for approximately two minutes before being placed in a police vehicle and transported to the First Precinct in Baldwin.

Pippins was recording using both her Iphone and Oliver's Ipod at this point, with one device in each hand. There is a dispute as to who actually effected Pippins's arrest but ultimately, she was placed in handcuffs and transported to the First Precinct as well. Pippins's Iphone and Oliver's Ipod were recovered from the lawn and submitted to Defendant Detective Brian Parpan ("Parpan") at the First Precinct.

Plaintiffs were processed for arrest, fingerprinted and photographed, and placed into cells at the First Precinct, where they were held overnight. Plaintiffs were arraigned the next morning - July 13, 2012 - at the Nassau County District Court. Defendant Lt. John Pizzimenti ("Pizzimenti") reviewed the paperwork for Plaintiffs' arrests to determine whether the cases

against them should go forward. Based on the paperwork submitted, Pizzimenti continued the cases against Plaintiffs.

On July 13, 2012, District Court Accusatory Instruments were filed against both Plaintiffs, charging each with Obstruction of Governmental Administration and Resisting Arrest, both of which are class A Misdemeanors under New York law. Pippins pled not guilty at her arraignment and was released on her own recognizance. Oliver also entered a plea of not guilty and bail was set at $1,000 bond or $500 cash, which Oliver was unable to post. Both cases were adjourned to July 17, 2012.

Due to his inability to post bail, Oliver was detained at Nassau County Correctional Center until the next court date, at which time counsel was assigned and the case was adjourned to the next day. On July 18, 2012, after having spent six days in jail, Oliver was released pursuant to an application under New York Criminal Procedure Law § 170.70.[1] The case was adjourned to August 28, 2012.

A few months after their arraignments, Plaintiffs' criminal attorneys notified the Nassau County District Attorney's ("DA") Office that there were videos of the July 12, 2012 incident on both Oliver's Ipod and Pippins's Iphone. On September 14, 2012, a meeting was held at the DA's office with Plaintiffs' criminal counsel wherein Defendant Parpan was directed to bring Oliver's Ipod and Pippins's Iphone. While Oliver was not present at the meeting, he provided his criminal attorney with his Ipod passcode to allow those present to unlock it.

---

[1] New York Criminal Procedure Law § 170.70 provides for the release of a defendant on his own recognizance if the defendant has spent more than five days in custody and the misdemeanor complaint upon which he has been charged has not been replaced with an information. See N.Y. Crim. Pro. Law § 170.70.

When Oliver's Ipod was examined at the September 14, 2012 meeting, its screen was cracked and the video of the July 12, 2012 incident could not be located. When Pippins's Iphone was turned on, the screen was locked and indicated an error that occurs when someone unsuccessfully attempts to unlock the Iphone by use of the incorrect password at least six times. Accordingly, the video on Pippins's Iphone was not able to be viewed either.

Upon being unable to view the videos on either device, an agreement was reached to allow a forensic search to be conducted of the devices by a federal agency expert. The DA's Office then sent the devices to the Office of the Secret Service in Brooklyn, New York where they were subsequently examined by Special Agent John McKenna of the Bureau of Alcohol, Tobacco & Firearms assigned to the Electronic Crimes Task Force. Agent McKenna examined Oliver's Ipod using a special software and was able to find the video from July 12, 2012. Upon examining Pippins's Iphone, however, Agent McKenna determined it was locked with the same incorrect passcode screen as it had been at the meeting held on September 14, 2012.

On February 5, 2015, both of the charges against Pippins were dismissed upon application by the DA's Office in the interest of justice, pursuant to New York Criminal Procedure Law § 170.30. The charges against Oliver proceeded to trial on December 9, 2013 and were dismissed by the trial judge on December 17, 2013 pursuant to New York Criminal Procedure Law § 290.10(1), on the grounds that the evidence presented was not legally sufficient to establish the offenses charged.

Plaintiffs commenced the within action on February 13, 2015, pursuant to 42 U.S.C. Section 1983, for violations of their First, Fourth, Fifth and Fourteenth Amendment rights. Specifically, Plaintiffs asserted the following causes of action: (1) First Amendment retaliation;

(2) deprivation of due process; (3) deprivation of equal protection; (4) deprivation of property; (5) false arrest; (6) malicious prosecution; (7) excessive force; (8) municipal liability; (9) abuse of process; (10) negligence; and, (11) defamation. The parties now cross-move for summary judgment. In response to Defendants' summary judgment motion, Plaintiffs have agreed to withdraw the following claims: (1) deprivation of due process under the Fourteenth Amendment, as duplicative of their Fourth Amendment claims; (2) municipal liability; and, (3) negligence. Plaintiffs also withdraw all claims alleged against the individual defendants in their official capacities, as redundant of their claim against the County of Nassau. Accordingly, Plaintiffs' due process claim, municipal liability claim and negligence claim, as well as all claims alleged against the individual defendants in their official capacities are dismissed, with prejudice. The following causes of action remain: (1) First Amendment retaliation; (2) deprivation of equal protection; (3) deprivation of property; (4) false arrest; (5) malicious prosecution; (6) excessive force; (7) abuse of process; and, (8) defamation.

## DISCUSSION

I. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to establish the lack of any factual issues. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The very language of this standard reveals that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. See Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 247 (1986). Rather, the requirement is that there be no "genuine issue of material fact." Id. at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts." Id. at 586. In addition, the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248.

When considering a motion for summary judgment, the district court "must also be 'mindful of the underlying standards and burdens of proof' . . . because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." SEC v. Meltzer, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006) (quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988)) (internal citations omitted). "Where the non-moving party would bear the ultimate burden of proof on an issue at trial, the burden on the moving party is satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim." Meltzer, 440 F. Supp. 2d at 187.

II. Qualified Immunity

"The doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Basinkski v. City of

New York, 192 F. Supp. 3d 360, 367 (S.D.N.Y. 2016) (quoting Bradway v. Gonzales, 26 F.3d 313, 317-18 (2d Cir. 1994)) (additional citation omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Aschcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (alterations in original). "There need not be 'a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Charles v. City of New York, No. 12-CV-6180, 2017 WL 530460, at *19 (E.D.N.Y. Feb. 7, 2017) (quoting al-Kidd, 563 U.S. at 741).

In determining whether defendants are entitled to qualified immunity, courts within this Circuit "look to Supreme Court and Second Circuit precedent existing at the time of the alleged violation to determine whether the conduct violated a clearly established right." Basinksi, 192 F. Supp. 3d at 367 (quoting Okin v. Village of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 433 (2d Cir. 2009)). "When neither the Supreme Court nor [the Second Circuit] has recognized a right, the law of our sister circuits and the holdings of district courts cannot act to render that right clearly established within the Second Circuit." Pabon v. Wright, 459 F.3d 241, 255 (2d Cir. 2006) (citation omitted). "If the right at issue was not clearly established by then existing precedent, then qualified immunity shields the defendant." Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007).

Here, Plaintiffs allege that Defendants retaliated against them for videotaping the actions of the police officers on July 12, 2012 by arresting them, in violation of their First Amendment rights. However, "[i]n July 2012, when Plaintiff[s] were arrested, neither the Supreme Court nor

the Second Circuit had directly addressed the constitutionality of recording officers engaged in official conduct." Gonzalez v. City of New York, No. 14 Civ 7721, 2015 WL 6873451, at *7 (S.D.N.Y. Nov. 9, 2015) (citation omitted); see also Ortiz v. City of New York, No. 11 Civ. 7919, 2013 WL 5339156, at *4 (S.D.N.Y. Sept. 24, 2013) (finding that since neither the Supreme Court nor the Second Circuit has addressed the right to video the conduct of police officers, the right is not "clearly established"); Mesa v. City of New York, No. 09 Civ. 10464, 2013 WL 31002, at *25 (S.D.N.Y. Jan. 3, 2013) (stating that "the right to photograph and record police is not clearly established as a matter of constitutional law in this Circuit"). Rather, "as of July 2012, the First, Seventh, Ninth and Eleventh Circuits had concluded that the right exists, but the Third and Fourth Circuits had determined that the right was not clearly established." Gonzalez, 2015 WL 6983451, at *7 (citing Mesa, 2013 WL 31002, at *23-25 (collecting cases)). The Second Circuit and the Supreme Court had yet to take up the issue at that time. Accordingly, "in July 2012, there was no clearly established right in this Circuit to videotape police officers." Gonzalez, 2015 WL 6983451, at *7 (citing cases).

Based on the foregoing, Defendants are entitled to qualified immunity with respect to Plaintiffs' First Amendment retaliation claims. "At the time of the acts alleged in the Complaint, the right to photograph and record police officers who are engaged in an ongoing investigation was not clearly established as a matter of constitutional law in this Circuit." Basinksi, 192 F. Supp. 3d at 368 (citing cases and granting qualified immunity to defendants with respect to plaintiff's First Amendment retaliation claim). To the extent the Complaint also contains a claim for violation of Plaintiffs' equal protection rights, such allegations also stem from Plaintiffs' recording of Defendants' actions on July 12, 2012. As such, and for the reasons set forth above,

Defendants are also entitled to qualified immunity with respect to Plaintiffs' equal protection claims.

Accordingly, Defendants' motion for summary judgment is granted with respect to Plaintiffs' First Amendment retaliation and equal protection claims and those claims are dismissed, with prejudice.

III. The Remaining Claims

Having reviewed the papers in support of and in opposition to the cross-motions for summary judgment, the Court finds that a genuine issue of material fact exists with respect to the remaining claims for deprivation of property, false arrest, malicious prosecution, excessive force, abuse of process, and defamation. Such issues of fact preclude the entry of summary judgment at this time. The parties may renew their arguments at the time of trial.

CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and the following claims are dismissed with prejudice: (1) First Amendment retaliation; (2) equal protection violations; (3) due process violations; (4) municipal liability; (5) negligence, and, (6) all official capacity claims alleged against the individual Defendants. In all other respects, Defendants' summary judgment motion is denied. Plaintiffs' motion for summary judgment is denied in its entirety.

A status conference will be held on March 28, 2018 at 10:30 a.m. in Courtroom 940, Alfonse M. D'Amato U.S. Courthouse, Central Islip, New York to set a date for jury selection

and trial. All counsel shall appear.

**SO ORDERED:**

Dated: Central Islip, New York
      March 9, 2018

                              LEONARD D. WEXLER
                              United States District Judge